THOMAS P. O'BRIEN (SB# 166369)
tobrien@bgrfirm.com
BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100

DANIEL PRINCE (SB# 237112)
danielprince@paulhastings.com
NICOLE D. LUEDDEKE (SB# 300341)
nicolelueddeke@paulhastings.com
Paul Hastings LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: 1(213) 683-6000
Facsimile: 1(213) 627-0705

Attorneys for Defendant
BRUCE LOVELESS

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE LOVELESS (5) et al.,<br><br>Defendants. | CASE NO. 17-CR-0623-JLS<br><br>**DEFENDANT BRUCE LOVELESS'S MOTION IN LIMINE TO EXCLUDE THE USE OF THE NOVEMBER 5, 2013 AUDIO RECORDING**<br><br>Hearing: September 2, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Janis L. Sammartino |

Defendant BRUCE LOVELESS requests that the Court preclude use and reliance by the Government on the original and enhanced recordings of its November 5, 2013 interview of Mr. Loveless, and any resulting transcript, without a proper showing of the process and methods used by the Government to enhance the recording and an opportunity for Mr. Loveless to challenge the methods of

1  enhancement.  Notwithstanding any such showing, the Court should preclude use of
2  any recording of the interview and subsequent transcript due to the substantial
3  inaudibility and resulting incompleteness of the audio recording.

# MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE THE USE OF THE NOVEMBER 5, 2013 AUDIO RECORDING

On November 5, 2013, Assistant United States Attorney Mark Pletcher, DOJ Trial Attorney Brian Young, and NCIS Special Agent Eric Maddox interviewed retired Rear Admiral Bruce Loveless. Ex. 1, NCIS-ROIS-0000006002. Mr. Loveless was unaware that the Government was covertly recording the discussion. The subsequent recording was of poor quality and much of the discussion was inaudible and unintelligible. *See* Ex. 2, NCIS-ROIS-0000106889. The Government then prepared a transcript of the recording with the assistance of a court reporting service.

As a result of the poor recording quality, Supervisory Special Agent Erin Carmichael solicited the assistance of Investigator Luke H. Borson, of the NCIS Technical Services Detachment Northwest, to "process[] the audio file using filters contained in the audio clarification tools." *Id.* According to Borson, "[d]ue to the low audio level and the high noise level the results [of clarification] were limited." *Id.* The Government also prepared a new transcript based on the enhanced recording. Substantial portions of the interview remain inaudible following the enhancement.

Mr. Loveless requests that the Court preclude use of the enhanced audio recording because the Government has not disclosed and demonstrated the reliability of the techniques used by the Government to enhance the recording and that the enhanced recording is an accurate representation of the original. Furthermore, the Court should exclude use of the original and enhanced audio recordings by the Government, and any subsequent transcripts that were prepared, because they are substantively incomplete to the point they will mislead the jury.

For evidence to be introduced, the party seeking to use the evidence must "support a finding that the item is what the proponent claims it is." Fed. R. Evid.

901(a).  If the Government seeks to admit an audio recording as evidence, it first must demonstrate that the audio recording is a "true, accurate, and authentic recording of the conversation, at a given time, between the parties involved." *Asia Econ. Inst. v. Xcentric Ventures, Ltd. Liab. Co.*, No. CV 10-1360 SVW (PJWx), 2010 U.S. Dist. LEXIS 133370, at *38 (C.D. Cal. July 19, 2010) (quoting *United States v. Andreas*, 23 F. Supp. 2d 835, 840 (N.D. Ill. 1998)) (excluding phone recordings when questions were raised regarding the completeness of the recording and the person recording the call did not testify to accuracy)).

The enhanced audio recording is by its very nature not an authentic version of the original – changes were made in an attempt to enhance the audibility of the recording.  In this circumstance, the Government must demonstrate that the methods used to modify the recording were reasonable and reliable such that the resulting content remains an accurate representation of the original. *See United States v. Thompson*, 130 F.3d 676, 684 (5th Cir. 1997) (admitting tapes only after testimony from the law enforcement officer who enhanced the audio recordings regarding the methods used to enhance the same, confirmation that no words were added or removed, and that the enhanced audio tapes reflect the substance of the underlying conversation).  The Government should be required to disclose and present evidence of the methods and tools used to enhance the audio in sufficient detail that Mr. Loveless can evaluate, and if necessary, challenge.

To date the Government has not disclosed evidence of what "audio enhancement tools" were used, what "filters" were changed, what methods were applied by Investigator Borson to "process[] the audio file," or how Investigator Borson was qualified to apply such methods and tools.  The Government must establish, through a witness with the relevant knowledge, what process was used to enhance the Loveless audio, including any software used, changes made to "filters," and how those changes can lead to a reliable output before that evidence is admissible for use at trial. *See Thompson*, 130 F.3d at 684 (authenticating

-4-                    MOTION IN LIMINE TO EXCLUDE AUDIO RECORDING

enhancements through an expert in the field of tape enhancement who testified in detail regarding the procedure by which the tape recordings were enhanced and verifying the accuracy of the recording).

Notwithstanding the process used to modify the enhanced audio recording, both the original and enhanced recordings contain such substantial gaps in content that their use will only result in confusion or rank speculation by the jury as to the substantive content of the recordings.

"A recorded conversation is generally admissible unless the unintelligible portions are so substantial that the recording as a whole is untrustworthy." *United States v. Gadson*, 763 F.3d 1189, 1205 (9th Cir. 2014) (quoting *United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975)). Audio may be excluded when a jury would be unable to hear "substantial portions of the conversations recorded on the tapes." *United States v. Tisor*, 96 F.3d 370, 376-77 (9th Cir. 1996); *see also Pogrebnoy v. Russian Newspaper Distrib.*, 693 F. App'x 650, 651 (9th Cir. 2017) (upholding exclusion of transcript as unreliable because it was "partial[ and] included numerous ellipses"); *United States v. Alvarez-Farfan*, 71 F. App'x 755, 756 (9th Cir. 2003) ("[D]istrict court did not abuse its discretion in excluding the audiotape recording.") (citing *Tisor*, 96 F.3d at 376); *United States v. Espinoza-Godinez*, No. 96-30141, 1997 U.S. App. LEXIS 885, at *5 (9th Cir. Jan. 17, 1997) (upholding district court which polled jury, asking if they could understand "most of the conversation" on the tape and excluded another tape because of poor quality).

Both the original and enhanced audio include substantial gaps. The Government's investigator, Investigator Borson, acknowledged that the enhancement recording provided only limited improvement in audio quality. A transcript of the enhanced audio produced on behalf of the Government shows 463 instances where the dialogue is "(inaudible)." Some "(inaudible)" sections are 30 seconds or longer and appear to reflect multiple rounds of dialogue. These gaps are not isolated to one or a few sections and some of these inaudible remarks are in key

sections the Government may rely on if it intends to introduce the audio recording at trial. The inaudible portions of the recording—which can each include multiple rounds of dialogue—show up approximately five times per page on average, according to the Government's own transcript. The pervasive nature of the Government's inability to understand *its own* surreptitious audio recording results in a recording which provides an incomplete picture of the dialogue between Mr. Loveless and the Government.

Additionally, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Here, should the Government attempt to offer portions of the audio recording, Mr. Loveless may be prevented from offering the context in response because that context is largely inaudible or unavailable. Accordingly, the purpose of Rule 106 is defeated, and the Government will be unduly benefited by its production of its own technically flawed recording.

For these reasons, the Court should exclude use of the original and enhanced audio recordings and the Government's transcript of the audio recordings.

DATED: August 12, 2021                      THOMAS P. O'BRIEN


                                            By: */s/ Thomas P. O'Brien*
                                                 THOMAS P. O'BRIEN

                                            Attorneys for Defendant
                                            BRUCE LOVELESS

# EXHIBIT 1

# EXHIBIT 1

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

INVESTIGATIVE ACTION                                                06NOV13

CONTROL: 13SEP13-SWND-0491-4HNA

S/GLENN DEFENSE MARINE ASIA PTE LTD/
  SINGAPORE, SGP

RESULTS OF INTERVIEW OF REAR ADMIRAL BRUCE LOVELESS

1. On 05Nov13, Mark PLETCHER, Assistant United States Attorney, Southern District of California, Brian YOUNG, Trial Attorney, Department of Justice, and Reporting Agent interviewed Rear Admiral Bruce LOVELESS at Building 1359 located on Andrews Air Force Base. LOVELESS waived his 31(b) rights. Enclosure (A) pertains.

2. The interview was recorded. Details of the interview will be provided via transcription in future reporting. The recording was entered into the Office of Special Projects evidence repository system (391-13) and subsequently mailed to the Executive Assistant Director Pacific Office.

ENCLOSURE(S)
(A) Loveless 31(b) Rights Waiver

REPORTED BY: ERIC MADDOX, Special Agent
OFFICE:      OFFICE OF SPECIAL PROJECTS

EXHIBIT 034

**FOR OFFICIAL USE ONLY**
*PAGE   1 LAST   DB V2 LNN*

WARNING
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE

# EXHIBIT 2

# EXHIBIT 2

# U.S. NAVAL CRIMINAL INVESTIGATIVE SERVICE

INVESTIGATIVE ACTION                                              06MAR17

CONTROL: 13SEP13-SWND-0491-4HNA

S/GLENN DEFENSE MARINE ASIA PTE LTD/
   SINGAPORE, SGP

RESULTS OF AUDIO CLARIFICATION SUPPORT


1. On 10FEB17, Reporting Officer (RO) received a request from Supervisory Special Agent (SSA) Erin CARMICHAEL, NCIS Pacific Operations to provide clarification of a digital audio recording. The audio is from an interview conducted on 05NOV13 by Special Agent (SA) Eric MADDOX, NCIS; Mark PLETCHER, Assistant United States Attorney, Southern District of California and Brian YOUNG, Trial Attorney, Department of Justice. The interview is of Rear Admiral Bruce LOVELESS and occurred at Building 1359 located on Andrews Air Force Base.

2. On 06MAR17, RA downloaded a digital audio file, "001_A_002.mp3" from the U.S. Army Aviation and Missile Research Development and Engineering Center (AMRDEC) Safe Access File Exchange (SAFE) secure file server. The file was downloaded to the hard drive of an audio clarification system for examination.

3. On 06MAR17, RA processed the audio file using filters contained in the audio clarification tools. Due to the low audio level and the high noise level the results were limited. However, the clarification resulted in portions of the recorded voices being more intelligible. A clarified audio file was created and saved in a .WAV format and copied to a CD-R (Enclosure (A) Pertains).

4. On 06MAR17, a copy of Enclosure (A) was uploaded to the ARMDEC SAFE server for download and it was also subsequently sent via FedEx to SSA Erin CARMICHAEL.


ENCLOSURE(S)
(A) (1) CD-R containing clarified audio file




REPORTED BY: LUKE H BORSON, Investigator
OFFICE:      TECHNICAL SERVICES DETACHMENT NORTHWEST




FOR OFFICIAL USE ONLY
*PAGE    1 LAST    JR V2 LNN*

WARNING
THIS DOCUMENT IS THE PROPERTY OF THE NAVAL CRIMINAL INVESTIGATIVE SERVICE
CONTENTS MAY BE DISCLOSED ONLY TO PERSONS WHOSE OFFICIAL DUTIES REQUIRE
ACCESS HERETO. CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED
WITHOUT SPECIFIC AUTHORIZATION FROM THE NAVAL CRIMINAL INVESTIGATIVE SERVICE.

EXHIBIT (1139)